UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN MARTINEZ,

                        Plaintiff,

    v.

C.O. AYCOCK-WEST,

                        Defendant.

No. 12-CV-4574 (KMK)

<u>OPINION AND ORDER</u>

---

<u>Appearances</u>:

Juan Martinez
New York, NY
*Pro Se Plaintiff*

Charles E. Carey, Esq.
Jeffrey S. Dantowitz, Esq.
New York City Law Department, Corporation Counsel
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Plaintiff Juan Martinez ("Plaintiff"), proceeding pro se, brings this Action against Defendant Correction Officer Aycock-West ("Defendant") under 42 U.S.C. § 1983, alleging that Defendant exhibited deliberate indifference to Plaintiff's serious medical need. Defendant moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Complaint for failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and for failure to state a claim. For the following reasons, Defendant's Motion To Dismiss is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purpose of resolving the instant Motion.[1]  On May 22, 2012 at approximately 7:30 p.m., Plaintiff, while incarcerated at the Anna M. Kross Center ("AMKC") at Rikers Island Prison Facility, slipped and fell at the "7-MOD mini clinic" while on a sick call visit.  (Compl. ¶¶ II.A–D (Dkt. No. 2).)[2]  Defendant, together with other inmates and medical staff, witnessed Plaintiff's fall, yet allegedly did nothing to assist him.  (Id. ¶ II.D.)  As a result of the fall, Plaintiff suffered lower back and neck pain.  (Id. ¶ III.)[3]

---

[1] Plaintiff has also submitted to the Court an "Injury to Inmate Report" ("Injury Report"), which was completed in separate portions by a corrections officer on May 22, 2012 and a doctor on May 23, 2012.  (Letter from Pl. to Court ("Pl.'s Ltr.") at unnumbered 2 (Dkt. No. 25).)  The Court notes it may consider the Injury Report, along with the other documents attached to Plaintiff's correspondence with the Court, as a supplement to the Complaint.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) ("[A]lthough courts generally may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read the papers of pro se litigants generously makes it appropriate to consider [the] plaintiff's additional materials." (italics and internal quotation marks omitted); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("[W]hen analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings.")  However, the Court only considers the Injury Report "to the extent that [it is] consistent with the allegations in the [C]omplaint."  *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks omitted).

[2] While the Complaint suggests that the incident occurred on May 21, 2012, the Injury Report shows that the incident took place on May 22, 2012, at approximately 9:00 p.m.  (Pl.'s Ltr. at unnumbered 2.)

[3] In a pre-motion conference held on November 19, 2012, Plaintiff, appearing via telephone, added color to these allegations.  (*See* Dkt. (minute entry for Nov. 19, 2012.).)  Plaintiff explained that when he fell, he hit a rail with his neck and the concrete floor with his back.  (*See* Decl. of Charles Carey, Esq. in Support of Mot. to Dismiss ("Carey Decl.") Ex. 2, at 6 (Dkt. No. 22).)  Plaintiff also alleged that he remained on the floor and screamed for help, yet

2

According to the Injury Report, Plaintiff received medical attention at 1:46 a.m. on May 23, 2012, approximately 30 hours after the initial injury when "he slipped on a wet area causing him to fall backwards." (Pl.'s Ltr. at unnumbered 2.)[4] The section completed by a corrections officer states that Plaintiff "claimed he fall [sic] and hit his back while . . . at sick call." (*Id.*) The latter portion of the Injury Report, completed by a doctor, indicates Plaintiff suffered a "spasm of [his] neck muscles" and "some soreness of [his] lower back" but retained "NL [normal] ambulation." (*Id.*) The attending physician prescribed "Motrin/Robaxin as needed" and a 60 mg intramuscular ("IM") injection. (*Id.*)[5] Plaintiff signed the bottom of the Injury Report, indicating that he "certif[ied] that the cause of injury as stated herein is to [his] knowledge true and medical attention was provided." (*Id.* at unnumbered 3.)

Plaintiff thereafter contacted the Inmate Grievance Review Committee ("IGRC") to complain that Defendant "denied [him] medical attention." (Compl. ¶¶ IV.D, E.) The Complaint alleges that he "complaine[d] to all" about the incident but received no response. (*Id.* ¶¶ IV.E, G.) Regarding any steps he took to appeal to the highest level of the grievance process,

---

Defendant "just stood there and look[ed] at [him,]" saying, "you got to get up, because ain't nobody helping you." (*Id.* at 7, 9.) Plaintiff further maintained that Defendant did not write an incident report. (*id.* at 9.) In addition, Plaintiff explained that a doctor carried him to the main clinic, where he was given x-rays, pain medication, and injection, as well as provided with a cane. (*Id.* at 8–9.)

[4] Of course, if a doctor carried Plaintiff from the site of his fall to the main clinic, it is likely that the actual date of his fall was May 22, 2012, as indicated in the Injury Report, rather than May 21, 2012, such that Plaintiff was treated six hours, rather than 30 hours, after his fall. (*See* Pl.'s Ltr. at unnumbered 2.)

[5] The name of the medication used in the injection is illegible. (*See* Pl.'s Ltr. at unnumbered 2.)

3

the Complaint merely notes that Plaintiff "contact[ed] [the] IG to complain[]." (*Id.* ¶ IV.E.)[6] Along with his "cross-motion" dated November 24, 2012, Plaintiff included an "Inmate Grievance and Request Program Statement Form" that he appears not to have completed. (*See* Carey Decl. Ex. 3, at 1–2; *see also supra* n.7.) Although the form includes space available for the signature of a grievance program staff member and a time stamp, that space is blank. (Carey Decl. Ex. 3, at 3.)

    B.  Procedural Background

Plaintiff filed his Complaint on June 7, 2012. (*See* Compl. (Dkt. No. 2.)) On November 7, 2012, Plaintiff filed a motion for pro bono counsel and an interpreter, (Dkt. No. 13), which the Court denied on February 6, 2013, (Dkt. No 17). On November 19, 2012, the Court held a pre-motion conference at which Plaintiff appeared by telephone. (*See* Dkt. (minute entry for Nov. 19, 2012).) Pursuant to a scheduling order set by the Court at the conference, (*see* Dkt. No. 14), Defendant filed her Motion To Dismiss and supporting papers on December 21, 2012, although those documents were not docketed until July 6, 2015, (Dkt. Nos. 21–24). Plaintiff did not file an opposition.

## II.  Discussion

    A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

---

[6] In quoting from this aspect of the Complaint, Defendant appears to define "IG" as "the Inspector General." (Def.'s Mem. 23.) However, the Court believes Plaintiff also could have been referring to IGRP, the "Inmate Grievance and Request Program." (*See* Carey Decl. Ex. 3, at 1.)

4

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *Twombly*, 550 U.S. at 563.  In short, a complaint must allege "only enough facts to state a claim to relief that is plausible on its face," but if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.* at 570.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014) ("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's] complaint are true.").  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res.,*

*Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Because Plaintiff proceeds pro se, the Court must "construe[] [his] [Complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks removed)).

Furthermore, as noted, in deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010);

6

*see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion"); *Rodriguez*, 2013 WL 4779639, at *1 ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (citations and internal quotation marks omitted)).

Finally, the "failure to oppose Defendant's [M]otion [T]o [D]ismiss does not, by itself, require the dismissal of [Plaintiff's] claims." *Leach v. City of N.Y.*, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013). Rather, even though "a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000).

B.  Analysis

Defendant moves to dismiss Plaintiff's Complaint on two grounds. First, Defendant argues that Plaintiff failed to exhaust his administrative remedies, as required by the PLRA. (Def.'s Mem. of Law in Supp. of Def.'s Mot. To Dismiss the Compl. ("Def.'s Mem.") 1 (Dkt. No. 23).) Second, Defendant argues that Plaintiff fails to state a claim for deliberate indifference to a serious medical need. (*Id.*)

1.  Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42

U.S.C. § 1997e(a).  The Second Circuit has made clear that "administrative exhaustion is not a jurisdictional predicate," but rather that "failure to exhaust is an affirmative defense."  *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (citation omitted).  Accordingly, "defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity."  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); *see also Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *3 (E.D.N.Y. Apr. 17, 2008) (explaining that exhaustion "must be pleaded and proved by [the] defendant" (citing *Jones v. Bock*, 127 U.S. 910, 912 (2007))).  The Second Circuit also has recognized certain circumstances that "justify the prisoner's failure to comply with the exhaustion requirement," namely when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense . . . or acted in such a[ ] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures."  *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).  Therefore, a motion to dismiss for failure to exhaust may only be granted if "nonexhaustion is clear from the face of the complaint, and none of the exceptions outlined by the Second Circuit are germane."  *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

The administrative grievance procedure that Rikers Island inmates must follow is a four-step process: "(1) file a complaint with the [IGRC] and request a formal hearing, (2) appeal to the facility warden or his designee, (3) appeal to the New York City Department of Corrections

Central Office Review Committee, and (4) appeal to the New York City Board of Correction." *Bush v. Horn*, No. 07-CV-3231, 2010 WL 1712024, at *3 (S.D.N.Y. Mar. 2, 2010). "Courts have repeatedly emphasized that a prisoner must pursue all levels of the administrative procedure in order to properly exhaust his administrative remedies." *Jones v. Rikers Is. Care Custody*, No. 07-CV-10414, 2010 WL 148616, at *2 (S.D.N.Y. Jan. 14, 2010).

The Complaint alleges that Plaintiff "contact[ed the] IG to complain[] about [the] issue[]." (Compl. ¶ IV.E.) In the section of the Complaint requesting that Plaintiff "set forth any additional information that is relevant to the exhaustion of [his] administrative remedies," Plaintiff even more generally alleges that he "complaine[d] to all about [his] slip and fall." (*Id.* ¶ IV.G.) Although Plaintiff does not specifically state that he complied with each level of the appeals process, or that he filed a grievance, interpreting his allegations liberally, his efforts are sufficient such that nonexhaustion is not clear from the face of the Complaint. *See Rodriguez v. Warden, Metro. Corr. Facility*, No. 13-CV-3643, 2015 WL 857817, at *3 (S.D.N.Y. Feb. 27, 2015) (finding that "failure to exhaust administrative remedies [was] not clear from the face of the complaint" because the plaintiff's statements about exhaustion were "ambiguous and somewhat opaque," and there was "no indication that they represent[ed] the entirety of his efforts"); *Jones v. Holmes*, No. 11-CV-5490, 2013 WL 171217, at *2 (E.D.N.Y Jan. 15, 2013) (finding failure to exhaust to "not [be] clear from the face of the complaint" where the plaintiff only indicated that he filed a complaint about the incident in question and did not receive a reply,

9

noting that this information only "suggest[ed] that plaintiff may not have exhausted his administrative remedies").[7] Accordingly, dismissal on this basis is inappropriate.

### 2.  Deliberate Indifference to a Serious Medical Need

"While prison officials should provide adequate medical care to prisoners, not every lapse in medical care is a constitutional wrong." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks omitted) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).  In this context, a pre-trial detainee's constitutional right to be free from cruel and unusual punishment in the form of inadequate medical care derives from the Fourteenth Amendment, not the Eighth Amendment, which is the source of the same right for convicted prisoners.  *See Bryant v. Maffucci*, 923 F.2d 979, 983 (2d Cir. 1991); *Mikulec v. Town of Cheektowaga*, 909 F. Supp. 2d 214, 222 (W.D.N.Y. 2012) (same).[8] "Eighth Amendment analysis, however, applies to both

---

[7] Plaintiff sent Defense counsel a copy of a grievance form he allegedly filed, which Defendant attached to its Declaration. (*See* Carey Decl. Ex. 3, at 3.)  The Court has its doubts as to the authenticity of this document, for while the document indicates that the form was submitted on May 21, 2012, the form itself indicates that the form version was effective as of September 10, 2012, thereby suggesting Plaintiff could not have filled out the form on the date alleged. (*See id.*)  The form also lacks the signature of a grievance program staff member. (*See id.*; *see also* Def.'s Mem. 4.)  Moreover, the Court, like Defendant, notes that the form is dated May 21, 2012, the day before the relevant incident occurred. (*See id.* (citing Carey Decl. Ex. 2, at 3).)  Nonetheless, the existence of this document does not make clear that Plaintiff did *not* exhaust his administrative remedies, such that dismissal is proper on this basis.  Defendant also has not submitted any additional evidence such that it would be appropriate to convert Defendant's instant Motion to a Rule 56 motion for summary judgment on the issue of exhaustion.  *See, e.g.*, *Hilbert v. Fischer*, No. 12-CV-3843, 2013 WL 4774731, at *3 (S.D.N.Y. Sept. 5, 2013) ("[W]here non[]exhaustion is not clear from the face of the complaint, courts should convert a Rule 12(b) motion into a Rule 56 motion for summary judgment limited to the narrow issues of exhaustion . . . ." (internal quotation marks omitted)).

[8] It is not clear from the Complaint whether Plaintiff was a pre- or post-trial detainee at the time of his injury.  This distinction, however, is not relevant to the Court's analysis here, as the test is the same for both classes of prisoners.  *Cf. Caiozzo*, 581 F.3d at 72.

claims." *Mikulec*, 909 F. Supp. 2d at 222; *see also Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). Thus, to state such a claim, Plaintiff must plausibly allege that "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities," and "(2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker*, 717 F.3d at 125 (alteration omitted) (internal quotation marks omitted); *see also Youmans v. City of N.Y.*, 14 F. Supp. 2d 357, 361 (S.D.N.Y. 2014) (same).

Plaintiff alleges deliberate indifference to a serious medical need on the basis that Defendant "observed [him] slip and fall" and "just stood the[re] and did nothing to help [him] or to see what type of damage ha[d] been done." (Compl. ¶ II.D.) The Court will consider these allegations in the context of both the objective and subjective prongs of Plaintiff's claim.

a. <u>Objective Prong</u>

Only an "unquestioned and serious deprivation of basic human needs" or of the "minimal civilized measure of life's necessities" will constitute a violation of Plaintiff's Eighth Amendment rights. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To determine whether there has been an objectively serious deprivation, the Court must consider (1) "whether the prisoner was actually deprived of adequate medical care," and (2) whether "the inadequacy in medical care is sufficiently serious." *Salahuddin*, 467 F.3d at 279. Under the first inquiry, adequate medical care is "reasonable care" such that "prison officials who act reasonably cannot be found

liable." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).  Under the second inquiry, the Court looks to "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  *Salahuddin*, 467 F.3d at 280.  Harm that is sufficiently serious is marked by "death, degeneration, or extreme pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *see also Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir. 2000) ("A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." (internal quotation marks omitted)).

      The deprivation Plaintiff alleges to have suffered does not satisfy the objective prong of deliberate indifference standard because it fails both inquiries.  Regarding the first inquiry, Plaintiff contends he was deprived of adequate medical care because Defendant "denied [him] medical attention."  (Compl. ¶ II.D.)  While Plaintiff alleges that Defendant did not provide medical care, the Injury Report submitted by Plaintiff makes clear that Plaintiff did, eventually, receive care, albeit six hours later (at the latest).  (Pl.'s Ltr. at unnumbered 2.)  Plaintiff does not allege that the medical care he eventually received was inadequate, nor that the several-hour delay "needlessly prolonged" or "exacerbated" his injuries in any way.  *See Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) ("Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in this Circuit, they have involved either a needlessly prolonged period

of delay, or a delay which caused extreme pain or exacerbated a serious illness."). Accordingly, Defendant did not deprive Plaintiff of adequate medical care under the objective standard.

As to the second inquiry, Plaintiff alleges that his injuries consisted of "lower back pain and neck [pain]," such that, for example, "[his] lower back really hurt bad when [he] la[id] on [his] D.O.C. mattress." (Compl. ¶ III.) The Injury Report likewise indicates that Plaintiff's injuries consisted of a "spasm of [his] neck muscles" and "some soreness of [his] lower back," though he retained "NL [normal] ambulation." (Pl.'s Ltr. at unnumbered 2.) Plaintiff's injuries are not sufficiently serious for two reasons. First, rather than being of the nature of "death, degeneration, or extreme pain," *Chance*, 143 F.3d at 702, Plaintiff's injuries, according to the Injury Report, were treatable with over-the-counter pain medication and an injection, (*see* Pl.'s Ltr. at unnumbered 2). Plaintiff does not allege otherwise or that he suffered any permanent harm. *See, e.g.*, *Sloane v. Borawski*, 64 F. Supp. 3d 473, 494 (W.D.N.Y. 2014) (finding that, even if the defendant did ignore the claimed "broken ribs, ankle fracture and lower right-side back injury," the "plaintiff cannot meet the objective component of an Eighth Amendment violation"); *Alster v. Goord*, 745 F. Supp. 2d 317, 337 (S.D.N.Y. 2010) ("Because hospital records reveal no fractures or dislocation, this injury is not sufficiently serious to meet the objective prong of the Eighth Amendment standard."); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44 (N.D.N.Y. 2009) (holding that two black eyes, bruising in the kidney area, kick marks, open lacerations, headache, and numbness did not constitute serious medical need for Eighth Amendment purposes); *Johnson v. Wright*, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007) (finding the prisoner's torn meniscus, for which he was treated by surgery, was not "a 'serious medical need' for Eighth Amendment purposes"), *aff'd*, 324 F. App'x 144 (2d Cir. 2009). Along these

13

lines, "subjective complaints of pain are not sufficient to satisfy [the serious medical need] standard." *Thomas v. Nassau Cty. Corr. Ctr.*, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003); *see also Evan v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (holding that "an assertion of pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need under the Eighth Amendment" (brackets and internal quotation marks omitted)). Second, according to a "Medication Order" dated May 18, 2012—three days before the incident—Plaintiff had lower back pain prior to the injury in question, and, in fact, had already been prescribed the same pain medications that Plaintiff received subsequent to his fall. (Pl.'s Ltr. at unnumbered 5.)[9] While Plaintiff does not explicitly allege that the fall worsened a pre-existing condition, the Medication Order, at the very least, suggests that the severity of any injury Plaintiff suffered *as a result of the fall* was minimal. *Cf. Prescott v. Riker Is. Med. Staff*, No. 09-CV-255, 2011 WL 1435218, at *6 (S.D.N.Y. Apr. 12, 2011) (finding the plaintiff did not state a claim because, inter alia, the harm was not sufficiently serious given that the plaintiff did "not offer any evidence that the shove, push, or shackling [at issue] exacerbated his pre-existing back injuries"). Accordingly, the Complaint does not sufficiently state a deliberate indifference claim under the objective prong.

      a. <u>Subjective Prong</u>

Under the subjective prong of Plaintiff's claim, the question is whether Defendant "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health or safety and that she was

---

[9] The Injury Report indicates that Plaintiff was prescribed Motrin and Robaxin, while the Medication Order indicates that Plaintiff was prescribed Ibuprofen (the active ingredient in Motrin) and Robaxin. (*See* Pl.'s Ltr. at unnumbered 2, 5.)

both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference." *Caiozzo*, 581 F.3d at 72 (quoting *Farmer*, 511 U.S. at 825) (internal quotation marks omitted).  Furthermore, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Salahuddin*, 467 F.3d at 280).  "Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id*. (internal quotation marks omitted).  "Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003).

>While Plaintiff alleges that Defendant witnessed the incident, Plaintiff fails to allege that Defendant knew of an excessive risk to Plaintiff's health or safety.  At its most specific, the Complaint contends that Defendant "observed" his slip-and-fall, together with medical staff, and that they "did nothing to help [him] or to see what type of damage ha[d] been done." (Compl. ¶ II.D.)  Given the alleged presence of medical staff, and Plaintiff's presence in a Rikers Island medical clinic at the time, (*see id.* ¶¶ II.A–B, D), these allegations do not suggest that Defendant should have inferred a serious risk of harm to Plaintiff, such that he *deliberately* disregarded it, *see Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

15

inference."); *see also Nielsen*, 746 F.3d at 63 ("Deliberate indifference . . . requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). [10] The Complaint makes no other allegations that indicate Defendant was on notice of a serious risk of harm. *See Caiozzo*, 581 F.3d at 72 (finding the plaintiff failed to establish deliberate indifference where "[m]ost of the evidence offered . . . was in support of the argument that [the defendant] *should have* been aware that [he] was in immediate danger," not "that [the defendant] was actually aware of that immediate danger"); *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 81 (E.D.N.Y. 2012) (finding the plaintiff "unable to satisfy the second prong of the deliberate indifference test" where the "plaintiff has presented no evidence that [the defendant] was aware of [his] medical concerns" or "that [the] defendant . . . was aware that there was a substantial risk of serious harm to [his] health"). Accordingly, the Complaint also does not sufficiently state a deliberate indifference claim under the subjective prong.

---

[10] As noted above, at the November 19, 2012 pre-motion conference, Plaintiff did elaborate on this portion of his claim, stating that after his slip-and-fall, he remained on the floor and screamed for help, while the Defendant "just stood there and look[ed] at [him]" saying, "you got to get up, because ain't nobody helping you." (Carey Decl. Ex. 2, at 7, 9.) Unlike the allegations in the Complaint, these assertions might suggest that Defendant deliberately disregarded Plaintiff's injuries. However, because these oral statements are not contained in Plaintiff's pleadings or any of Plaintiff's supplemental filings with the Court, the Court cannot consider them at the motion to dismiss stage. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) ("[W]e limit our consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference."). In any event, even if these allegations were admissible, Plaintiff's injury is still not sufficiently serious to meet the objective prong of the deliberate indifference standard.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted without prejudice. Plaintiff may file an Amended Complaint with 30 days addressing the deficiencies identified in this Opinion. Otherwise, the Court will dismiss the case. The Clerk of the Court is respectfully directed to terminate the pending Motion. (Dkt. No. 21).

SO ORDERED.

Dated:   February __, 2016
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

17